IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL |
| | : | |
| v. | : | NO.   09-218 |
| | : | |
| BRANDON PIPER | : | |

## OPINION

**Slomsky, J.**                                                                 **August 19, 2011**

### I.    INTRODUCTION

Defendant Brandon Piper is charged with eight counts of narcotics violations.  Trial is scheduled to begin on October 31, 2011.  Before the Court are seven pre-trial Motions.  After consideration of the Motions and arguments made by counsel both in their briefs and at a hearing held on August 5, 2011, and for reasons set forth below, the Court will rule on the Motions in a seriatim fashion.

### II.    BACKGROUND AND RELEVANT PROCEDURAL HISTORY

On July 15, 2009, Defendant Brandon Piper was charged in an eight count Indictment (Doc. No. 1).  Counts One through Four cover conduct that occurred on August 18, 2007.  On that day, Piper, then 19-years old, is charged with pooling his money with a friend, E.B., 16-years-old, to purchase heroin.  Piper, E.B., and a female acquaintance, Amber Barger, drove to a housing project in Harrisburg, Pennsylvania, where Barger had purchased controlled substances previously.  Barger took the money from Piper and E.B., went into the housing project and purchased heroin.  Later that evening, E.B. died of an apparent drug overdose.  The dose was

injected into E.B. by Barger at her residence while Piper waited outside in a car with a baby who had been entrusted to his care.

Based on these actions, Piper is charged in the Indictment with the following offenses: Count One – distribution, and aiding and abetting the distribution, of heroin resulting in death in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2;  Count Two – distribution, and aiding and abetting the distribution, of heroin in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2;  Count Three – distribution, and aiding and abetting the distribution, of heroin to a person under twenty one years of age in violation of 21 U.S.C. § 859(a) and 18 U.S.C. § 2; and Count Four – distribution, and aiding and abetting the distribution, of heroin within 1,000 feet of a public housing facility in violation of 21 U.S.C. 860 and 18 U.S.C. § 2.[1]

Before the Court are seven pre-trial Motions.  They are:  (1) Government's Motion In Limine to Exclude Mention of Penalties (Doc. No. 87);  (2) Government's Motion In Limine to Preclude Mention of E.B.'s Non-Fatal Overdose (Doc. No. 94);  (3) Defendant's Motion In Limine to Exclude Evidence Offered Under Rule 404(b) (Doc. No. 89);  (4) Defendant's Supplemental Motion for Discovery (Doc. No. 108);  (5) Defendant's Motion In Limine to Exclude Evidence Regarding the Defendant's Failure to Provide Timely Emergent Medical Care to the Decedent (Doc. No. 93);  (6) Defendant's Motion to Transfer This Matter to the Eastern District of Pennsylvania For Trial Pursuant to Rule 21(b) of the Federal Rules of Criminal Procedure (Doc. No. 107); and (7) Defendant's Motion to Utilize Written Jury Questionnaires

---

[1]      The remaining four counts do not relate to the events of August 18, 2007.  They are: Counts Five and Six – distribution of heroin and distribution of heroin within 1,000 feet of Central Pennsylvania College on March 4, 2008, and Counts Seven and Eight – distribution of marijuana for remuneration and distribution of marijuana for remuneration within 1,000 feet of Central Pennsylvania College on March 10, 2008.

(Doc. No. 91).  The Court will address each Motion below.

## III.   ANALYSIS OF PENDING MOTIONS

### A.   Government's Motion In Limine to Exclude Mention of Penalties

Defendant Piper was 19-years-old at the time of the offenses charged in the Indictment

and he is currently 23-years-old.  If convicted, Piper faces a maximum sentence of life

imprisonment.  (Doc. No. 87 at 2.)  He also faces a mandatory minimum sentence of twenty years

imprisonment.  (Id.)  The pertinent federal sentencing guideline range may be in the range of

thirty years to life imprisonment.  (Id.)

The Government asks the Court to preclude defense counsel from referring in the

presence of the jury to the potential penalties Piper faces, including the statutory minimum and

maximum periods of incarcerations, and the federal sentencing guideline range that may apply

here.  (Id.)  At the hearing held on August 5, 2011, defense counsel concurred with Government

counsel that reference to penalties that Piper faces are not proper for a jury to consider.  Defense

counsel represented that he would not refer to these penalties at trial.  (Transcript of Aug. 5, 2011

Hearing ("Hr'g Tr.") at 5:13–18.)  This concession is correct in light of the controlling case law.

See United States v. Fisher, 10 F.3d 115, 121 (3d Cir. 1993) (citing Rogers v. United States, 422

U.S. 35, 40 (1975) and Government of the Virgin Islands v. Fredericks, 578 F.2d 927, 935 (3d

Cir. 1978))("In the federal courts, the role of the jury in a non-capital case is to determine

whether the defendant is guilty or not guilty based on the evidence and the applicable rules of

law.  The jury is supposed to perform this role without being influenced in any way by what the

consequences of its verdict might be."); Shannon v. United States, 512 U.S. 573, 579 (1994)

("Information regarding the consequences of a verdict is irrelevant to the jury's task and should

be inadmissible.").

Counsel for Defendant Piper had interpreted the Government's Motion to seek exclusion of any reference to penalties that Amber Barger faces in state court where she is being prosecuted for her conduct on August 18, 2007 or to penalties that she would have faced in federal court for the same conduct. At the hearing on August 5, 2011, counsel for the Government clarified that it does not seek to preclude facts relating to the penalties faced by Amber Barger, who will be a government witness at trial. The Government only seeks to exclude reference to penalties faced by Defendant Piper. (Hr'g Tr. at 5:5–11.)

In light of the foregoing agreement and clarification, the Court will grant the Government's Motion insofar as it refers to penalties faced by Defendant Piper.

B.      Government's Motion In Limine to Preclude Mention of E.B.'s Non-Fatal
        Overdose

On May 16, 2007, three months before the fatal overdose, E.B. took 4-methyl-2,5-dimethoxyamphetamine. He was hospitalized for the effects of this non-fatal overdose. The distributor of the drug, Justin Smith, was indicted in a separate criminal case in the United States District Court for the Middle District of Pennsylvania. He was charged with distribution of a controlled substance, the use of which resulted in serious bodily injury. (Doc. No. 94 at 2.)

The Government moves to preclude defense counsel from referring at trial to the non-fatal overdose and events leading up to and surrounding it. According to the Government, the incident is not admissible under Federal Rule of Evidence 402 because it is not relevant. (Doc. No. 94 at 2.) Counsel argues that the non-fatal overdose resulted from use of a drug other than heroine and was obtained from a person other than Piper. Further, Piper was not involved at all

4

in the events of May 16, 2007. (Id.)

Defense counsel argues that the events surrounding the May 16, 2007 non-fatal overdose are relevant to the charges to which Piper has a constitutional right to present a complete defense. Whether heroin was the cause of E.B.'s death is an element of the offense charged at Count One of the Indictment. Counsel argues that it is therefore relevant for him to explore the impact of the prior non-fatal overdose on E.B.s physiology, pulmonary system, and heart to test the soundness of the testimony of Government experts who are expected to testify that heroin was the cause of E.B.'s death. (Doc. No. 96 ¶ 10.) Defense counsel also argues that this information is relevant because Piper is charged with aiding and abetting the delivery of drugs to E.B. and information regarding the events leading up to the non-fatal overdose tend to make it more likely than not that E.B. had an independent desire to acquire and use heroin on August 18, 2007, apart from any involvement by Piper. (Id. ¶ 8.)

Generally, unless otherwise excludable, all relevant evidence is admissible at trial. See Federal Rule of Evidence 402; United States v. Ali, 493 F.3d 387, 391 (3d Cir. 2007). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. of Evid. 401. Here, evidence concerning E.B.'s May 16, 2007 non-fatal overdose is relevant. This evidence includes events prior to the overdose and the physical and mental consequences suffered by E.B. as a result of the overdose. This evidence is relevant to whether Defendant Piper aided and abetted in the distribution of heroin to E.B. and whether that heroin was the cause of E.B.'s death as charged in the Indictment. Accordingly, the Court will deny the Government's Motion In Limine to Preclude Mention of E.B.'s Non-Fatal Overdose.

C.      Defendant's Motion In Limine to Exclude Evidence Offered Under Rule 404(b)

In this Motion, counsel for Defendant seeks to exclude three forms of evidence pursuant

to Federal Rule of Evidence 404(b):[2] (1) in May or June 2007, Defendant Piper stole hypodermic

needles from his grandfather and sold them to Amber Barger for $3.00 each; (2) the needles used

by Amber Barger to inject herself with heroine and to inject E.B. on August 18, 2007 were

purchased by Barger from Piper; and (3) on August 18, 2007, when Barger, E.B., and Piper drove

to the housing project to purchase heroin and when E.B. went into Barger's house to inject

heroin, a baby was in the car under Piper's care.

With regard to item (2), involving the needles used by Barger and E.B. on August 18,

2007 being provided by Piper, the Government represented at the hearing that it no longer seeks

to introduce this evidence at trial.  (Hr'g Tr. at 19:24–20:3.)  According to the Government,

Barger was recently interviewed and said that she has no recollection of where she obtained the

needles that she and E.B. used on August 18, 2007.  (Hr'g Tr. at 20:9-11; 20:24–21:19.)

Accordingly, the Court will deny Defendant's Motion in regard to the evidence in item (2).

As to item (1), Piper stealing hypodermic needles from his grandfather and selling them

---

[2]      Rule 404(b) states:

Character Evidence Not Admissible To Prove Conduct; Exceptions; Other Crimes
. . .(b) Other Crimes, Wrongs, or Acts.--Evidence of other crimes, wrongs, or acts is
not admissible to prove the character of a person in order to show action in
conformity therewith. It may, however, be admissible for other purposes, such as
proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence
of mistake or accident, provided that upon request by the accused, the prosecution in
a criminal case shall provide reasonable notice in advance of trial, or during trial if
the court excuses pretrial notice on good cause shown, of the general nature of any
such evidence it intends to introduce at trial.

to Barger on one or more occasions prior to August 2007, defense counsel asserts that this evidence is not admissible. Counsel argues that it is not relevant and is inadmissible evidence of a prior "bad act." The Government argues to the contrary that this evidence is relevant and that it is intrinsic to the crime charged.[3] (Hr'g Tr. at 23:18–25.)

Federal Rule of Evidence 404(b) "generally prohibits the introduction of evidence of extrinsic acts that might adversely reflect on the actor's character, unless that evidence bears upon a relevant issue in the case such as motive, opportunity, or knowledge." Huddleston v. United States, 108 S. Ct. 1496, 1499 (1988). To be admissible under Rule 404(b), "evidence of uncharged crimes or wrongs must (1) have a proper evidentiary purpose; (2) be relevant; (3) satisfy Rule 403; and (4) be accompanied by a limiting instruction (where requested) about the purpose for which the jury may consider it." United States v. Green, 617 F.3d 233, 240 (3d Cir. 2010) Evidence that is intrinsic to the crime charged does not fall within Rule 404(b). Green, 617 F.3d at 245. Evidence is intrinsic if it "'directly proves' the charged offense." Id. at 248 (citations omitted). Further, "'uncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime.'" Id. at 249 (quoting United States v. Bowie, 232 F.3d 923, 929 (D.C. Cir. 2000)).

The fact that Piper sold hypodermic needles to Barger on prior occasions for the purpose of injecting a controlled substance is extrinsic evidence. It does not directly prove any of the

---

[3]     Government counsel clarified that it will not introduce at trial the fact that Piper stole the needles from his grandfather. The evidence relating to the needles will be limited to the fact that Piper sold hypodermic needles to Barger for a period of several months prior to the incident on August 18, 2007.

offenses charged and it was not performed contemporaneously with any of the crimes charged.[4] However, the evidence is admissible under 404(b). "The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character," Huddleston, 108 S. Ct at 1499, that is, whether it serves a proper evidentiary purpose. Here, this evidence is probative of a preexisting relationship between Piper and Barger, which includes at the very least distribution of drug paraphernalia. This evidence is relevant because it makes it more likely that Piper aided and abetted Barger in the distribution of heroin to E.B. on the night in question. Such evidence is also probative of Piper's knowledge as it raises the inference that Piper had knowledge that the needles would be used by Barger and others for an illicit purpose. Further, the probative value of this evidence is not outweighed by a danger of unfair prejudice. Evidence that Piper sold needles to Barger in the past will not lead to any unfair prejudice, especially in light of the fact that the jury will hear other testimony about Piper's longstanding involvement with drugs and his involvement with Barger. (Hr'g Tr. at 26:14-19.) Therefore, Defendant's Motion regarding the evidence in item (2) will be denied.[5]

Finally, counsel for Piper argues that item (3), involving Piper having a baby in the car

---

[4]     In its brief, counsel for the Government argued that evidence relating to the needles was intrinsic. However, the Government's argument was predicated on the fact that Barger used a needle that she had purchased from Piper to inject heroine into E.B. on August 18, 2007. In that case, such evidence might be intrinsic. However, counsel for the Government no longer contends that the needle used that night was supplied by Piper. Rather, counsel seeks to admit evidence that Piper sold needles to Barger in the months leading up to the night of the incident. This evidence is extrinsic.

[5]     Defense counsel may submit a limiting instruction relating to this evidence at trial.

when Piper, E.B., and Barger went to purchase heroin on August 18, 2007, and when E.B. and

Barger went into Barger's home to inject the heroin, is not relevant to any issue at trial and is

inadmissible under Rule 404(b).  Counsel for the Government argues that the fact of the baby

being in the car is intrinsic to the offenses charged and is outside the scope of Rule 404(b).

Counsel argues that having the baby in the car directly proves the charged offenses because it

helps to establish "Piper's knowing and intentional participation in the heroin distribution at

issue in this case." (Doc. No. 99 at 3.)

The Government is correct that the evidence of the presence of the baby entrusted to Piper

in the car is intrinsic to the crimes charged.  This evidence raises an inference relevant to the

Government's case at trial and may directly prove the charge that Piper knowingly aided and

abetted Barger in the distribution of heroine to E.B on August 18, 2007.  The fact that there was a

baby in the car on the night of August 18, 2007 tends to make it more probable that Piper stayed

in the car because he was responsible for the child and less probable that he stayed in the car

because he wanted to disassociate himself from the distribution of heroin to E.B or that he was

unaware that Barger and E.B. were going to inject heroin while in the residence.

The Court will therefore deny Defendant's Motion regarding the evidence in item (3).

D.       Defendant's Supplemental Motion for Discovery

In this Supplemental Motion for Discovery, Defendant argues that there are three matters

that require supplemental discovery: (1) Amber Barger's statements regarding hypodermic needles

used to inject heroin into E.B. on August 18, 2007; (2) details of any express or implied

agreement between the Government and Amber Barger, including the fact that Barger would be

prosecuted in state and not federal court for her involvement in the August 18, 2007 incident; and

(3) rough notes of any agents and attorneys present at a December 18, 2007 interview of Amber Barger when she provided the Government with a proffer statement about the events of August 18, 2007.

Regarding Amber Barger's statements about the hypodermic needles used on August 18, 2007, the Court has already addressed this matter above. The Government has informed defense counsel that it recently interviewed Barger and she has no recollection of where she acquired the needles used that night. Because the Government has provided counsel for Defendant with this information, the Court will deny Defendant's Motion on this point as moot.

As to the terms of any agreement between the Government and Amber Barger regarding her prosecution in state court and not in federal court, the Court will deny Defendant's Motion as moot. At the hearing, Government counsel represented that a verbal agreement exists between the Government and Barger. Government counsel further represented that a written agreement will be necessary and forthcoming and that the written agreement will encompass all promises made by the Government to Barger. Counsel has represented that they will promptly provide defense counsel with the written agreement as part of the Government's obligation under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). (Hr'g Tr. at 37:9-16.).

Finally, as to the rough notes of any agents and attorneys present at the December 18, 2007 proffer interview, the Court will grant Defendant's Motion. Rough notes of witness interviews must be disclosed. <u>See United States v. Guevara</u>, 96 F.3d 698, 705 (3d Cir. 1996). At the August 5, 2011 oral argument, the Court instructed the Government to confirm whether any rough notes exist. (Hr'g Tr. 50:9-22.) To the extent that such notes do exist, the Government shall provide them to defense counsel.

E.    Defendant's Motion In Limine to Exclude Evidence Regarding the Defendant's
Failure to Provide Timely Emergent Medical Care to the Decedent

Defense counsel moves to preclude the Government from introducing evidence at trial

regarding Piper's failure to timely provide emergent medical care to E.B.  (Doc. No. 93 ¶ 2.)

More specifically, counsel seeks to exclude evidence of what transpired between Piper and E.B.

from approximately 11:00 p.m. on August 18, 2007 when E.B. returned to Piper's car from

Barger's residence, until 3:00 a.m. on August 19, 2007, when Piper brought E.B. to the hospital.

Defense counsel avers that the actions taken during those four hours are not relevant to the mens

rea of the offense, that is, whether Piper knowingly and intentionally aided Barger in the delivery

of heroin to E.B.  (Id. ¶ 4.)  Further, counsel argues that the evidence is not relevant to the actus

reas of the offense, that is, whether Barger physically delivered heroin to E.B.  (Id.)  Counsel also

asserts that the activities during those four hours are not relevant to the issue of whether E.B.'s

heroin use resulted in his death because the relevant statute imposes strict liability upon the

individual who distributes a controlled substance, the use of which results in death.  (Id. ¶ 5.)

According to the Government, the evidence is a necessary part of the story of what

transpired during the evening and early morning hours in question.  (See Doc. No. 98 ¶¶ 3–4, 9.)

If the Government is precluded from presenting evidence of what occurred during that four hour

hiatus, this omission may mislead or confuse the jury.  Further, the Government intends to present

evidence from two experts, both of whom concluded that the delay in bringing E.B. to the hospital

after the overdose of heroin contributed to E.B.'s death.  (Id. ¶ 7.)  This evidence is therefore

relevant to a determination of the cause of death of E.B., which is a critical element of the Count

One charge against Piper.

11

The Government's argument is persuasive.  Evidence of what transpired between E.B. and Piper from 11:00 p.m. on August 8, 2007 until 3:00 a.m. on August 9, 2007 is relevant to provide a complete picture of the events that preceded E.B.'s death.  In addition, central issues in this case are whether an overdose of heroin caused E.B.'s death and how the delay in bringing E.B. to a hospital for treatment contributed to the death.  For these reasons, it is relevant to present to the jury evidence of what happened during the interval between the ingestion of the heroin and E.B.'s demise.  Therefore, the Court will deny Defendant's Motion.

F.   Defendant's Motion to Transfer This Matter to the Eastern District of Pennsylvania for Trial Pursuant to Rule 21(b) of the Federal Rules of Criminal Procedure

Defendant moves to transfer this case from the Middle District of Pennsylvania (the "Middle District") to the Eastern District of Pennsylvania (the "Eastern District").  The father of decedent E.B. is an Assistant United States Attorney in the Middle District and his office is located in the federal courthouse where the trial is scheduled to take place.  Primarily because of the nature of the father's employment and his proximity in the courthouse, counsel for Defendant argues that it is in the interest of justice for the trial to occur outside the Middle District.  (Doc. No. 107 ¶¶ 1–2.)  The Government opposes the Motion.  (See Doc. No. 109.)

Federal Rule of Criminal Procedure 21(b) provides that, "[u]pon the defendant's motion the court may transfer the proceeding, or one or more counts, against the defendant to another district for the convenience of the parties and witnesses and in the interest of justice." Fed. R. Crim. P. 21(b).  In Platt v. Minnesota Mining & Manufacturing Co., 376 U.S. 240 (1964), the U.S. Supreme Court set forth ten factors that a court should consider when determining whether to transfer a case pursuant to Rule 21(b).  They are:

12

(1) location of [the] . . . defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of [the] place of trial; (9) docket condition of each district . . . involved; and (10) any other special elements which might affect the transfer.

Platt, 376 U.S at 243–44.

Here, these factors weigh in favor of a trial occurring in the Middle District and not in the Eastern District.[6] The Middle District is where Defendant Piper and the majority of potential witnesses are located, where the events likely to be at issue occurred, and where the documents and records likely to be involved are located. Piper has no commercial business that would be disrupted. (Doc. No. 107 at 12.) These factors weigh in favor of a trial in the Middle District.

Neither defense counsel, Government counsel, nor the assigned trial judge have their designated offices located in the Middle District.[7] Because counsel for both parties would have to travel to the Middle District for trial, this factor does not weigh one way or the other in favor of transfer. Moreover, this Court, which sits primarily in the Eastern District, has been assigned this

---

[6]    The Government argues that regardless of the relevant factors, the case must not be transferred under the "the law of the case" doctrine. For reasons explained in n. 6 below, this case was originally assigned to the Honorable Maurice B. Cohill, a U.S. District Court Judge for the Western District of Pennsylvania (the "Western District"). On May 3, 2010, defense counsel moved to have the case transferred for trial from the Middle District to the Western District. (Doc. No. 39.) Judge Cohill denied the Motion, finding that the Platt factors weighed in favor of the case remaining in the Middle District. (Doc. No. 59 at 2.) Whether or not this ruling is the "law of the case," the Court agrees with Judge Cohill's analysis and reaches the same conclusion with respect to the instant Motion to transfer the case to the Eastern District.

[7]    Because E.B.'s father is an Assistant United States Attorney in the Middle District, the Judges of the United States District Court for the Middle District of Pennsylvania and the United States Attorney's Office for the Middle District of Pennsylvania recused themselves from involvement in this case. The Assistant United States Attorneys prosecuting this matter are assigned to the United States Attorney's Office for the Eastern District of Pennsylvania.

case because the Court is assisting the judges in the Middle District with cases filed in that District. Whether this Court conducts this trial in a courthouse in the Middle District or in the Eastern District is not an issue. Modern technology permits the Court to maintain a current docket. This factor is also a neutral one.

Because the majority of factors weigh against transfer of this case to the Eastern District, the Court will deny Defendant's Motion to Transfer.

G.    Defendant's Motion to Utilize Written Jury Questionnaires

Finally, Defendant moves for permission to utilize a jury questionnaire in order to efficiently obtain information on prospective jurors. (Doc. No. 91 ¶ 3.) Counsel avers that written questionnaires allow for more candid responses from a jury panel. (Id.) The Government objects to the use of the questionnaire as unnecessary, wasteful of judicial resources, and overly intrusive. (See Doc. No. 100.)

As the Court explained at the August 5, 2011 hearing, the Court is not opposed to the use of a jury questionnaire. However, the questions should not be overly intrusive and should not duplicate the standard voir dire questions that the Court will ask of the venire panel orally. At the hearing, the Court advised counsel for both parties to review the Court's standard voir dire questions, consult with each other, and if still deemed necessary by the defense, to submit a revised proposed jury questionnaire to the Court for review. The Court will reserve judgment on this Motion until such time as a new proposed questionnaire, if any, is submitted.

IV.    **CONCLUSION**

For reasons explained above, the Court will (1) grant the Government's Motion In Limine to Exclude Mention of Penalties (Doc. No. 87); (2) deny the Government's Motion In Limine to

Preclude Mention of E.B.'s Non-Fatal Overdose (Doc. No. 94);  (3) deny Defendant's Motion In Limine to Exclude Evidence Offered Under Rule 404(b) (Doc. No. 89);  (4) grant in part and deny in part Defendant's Supplemental Motion for Discovery (Doc. No. 108);  (5) deny Defendant's Motion In Limine to Exclude Evidence Regarding the Defendant's Failure to Provide Timely Emergent Medical Care to the Decedent (Doc. No. 93); (6) deny Defendant's Motion to Transfer This Matter to the Eastern District of Pennsylvania For Trial Pursuant to Rule 21(b) of the Federal Rules of Criminal Procedure (Doc. No. 107); and (7) reserve ruling on Defendant's Motion to Utilize Written Jury Questionnaires (Doc. No. 91).

As appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL |
| | : | |
| v. | : | NO.   9-218 |
| | : | |
| BRANDON PIPER | : | |

## ORDER

AND NOW, this 19th day of August 2011, upon consideration of (1) the Government's

Motion In Limine to Exclude Mention of Penalties (Doc. No. 87);  (2) the Government's Motion

In Limine to Preclude Mention of E.B.'s Non-Fatal Overdose (Doc. No. 94);  (3) Defendant's

Motion In Limine to Exclude Evidence Offered Under Rule 404(b) (Doc. No. 89);  (4)

Defendant's Supplemental Motion for Discovery (Doc. No. 108);  (5) Defendant's Motion In

Limine to Exclude Evidence Regarding the Defendant's Failure to Provide Timely Emergent

Medical Care to the Decedent (Doc. No. 93);  (6) Defendant's Motion to Transfer This Matter to

the Eastern District of Pennsylvania For Trial Pursuant to Rule 21(b) of the Federal Rules of

Criminal Procedure (Doc. No. 107); (7) Defendant's Motion to Utilize Written Jury

Questionnaires (Doc. No. 91); all related briefs; arguments presented by counsel for both parties

at a hearing held on August 5, 2011, and for reasons explained in this Court's Opinion dated

August 19, 2011, it is ORDERED as follows:

(1)  The Government's Motion In Limine to Exclude Mention of Penalties (Doc. No. 87) is GRANTED.

(2)  The Government's Motion In Limine to Preclude Mention of E.B.'s Non-Fatal Overdose (Doc. No. 94) is DENIED.

(3)  Defendant's Motion In Limine to Exclude Evidence Offered Under Rule 404(b) (Doc. No. 89) is DENIED.

1

(4)     Defendant's Supplemental Motion for Discovery (Doc. No. 108) is GRANTED in part and DENIED in part.

      (A)     The portion of the Motion addressing Amber Barger's statements regarding hypodermic needles used to inject heroin into E.B. on August 18, 2007 is DENIED as moot.

      (B)     The portion of the Motion addressing details of any express or implied agreement between the Government and Amber Barger, including the fact that Barger would be prosecuted in state and not federal court for her involvement in the August 18, 2007 incident is DENIED as moot.

      (C)     The portion of the Motion addressing rough notes of any agents and attorneys present at a December 18, 2007 interview of Amber Barger when she provided the Government with a proffer statement about the events of August 18, 2007 is GRANTED.

(5)     Defendant's Motion In Limine to Exclude Evidence Regarding the Defendant's Failure to Provide Timely Emergent Medical Care to the Decedent (Doc. No. 93) is DENIED.

(6)     Defendant's Motion to Transfer This Matter to the Eastern District of Pennsylvania For Trial Pursuant to Rule 21(b) of the Federal Rules of Criminal Procedure (Doc. No. 107) is DENIED.

(7)     The Court reserves ruling on Defendant's Motion to Utilize Written Jury Questionnaires (Doc. No. 91).

BY THE COURT

*Joel Slomsky*

JOEL H. SLOMSKY, J.

2